IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Janice E. Rouse, | C/A No. 0:11-2636-MGL-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Janice E. Rouse ("Rouse"),[2] brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In August 2008, Rouse applied for DIB, alleging disability beginning September 3, 2005. (Tr. 113-14.) Rouse's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 22, 2010, at which Rouse appeared and testified. Rouse was informed of her right to representation at the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.

[2] The record also contains references to Janice Rouse as Janice Tutt.

hearing, but chose to represent herself. After hearing testimony from a vocational expert, the ALJ issued a decision on November 4, 2010 finding that Rouse was not disabled. (Tr. 18-29.)

Rouse was forty-six years old at the time of her alleged disability onset date. (Tr. 124.) She has a high-school education, one year of college, and certification as a licensed practical nurse. (Tr. 134, see also Tr. 36-37.) She has past relevant work experience as a nurse. (Tr. 129.) In her application, Rouse alleged disability since September 3, 2005 due to allergies, asthma, and narcolepsy. (Tr. 128.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 3, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: asthma, allergies, and narcolepsy with cataplexy (20 CFR 404.1520(c)).
   \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
   \* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) with the following restrictions: no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; avoidance of hazards such as unprotected heights and dangerous machinery; and an environment free from dust, fumes, gases, odors, and extremes of humidity and temperature.
   \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
   \* \* \*

7. The claimant was born . . . [in] 1958 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The



       claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

\*   \*   \*

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2005, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-29.) Rouse submitted additional evidence to the Appeals Council, which denied her request for review on May 10, 2011, making the decision of the ALJ the final action of the Commissioner. (Tr. 7-10.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[3] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported

---

[3] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

PJG

by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Rouse essentially argues that the ALJ's opinion is not supported by substantial evidence for a variety of reasons. (See Pl.'s Br., ECF No. 52.) Rouse points to evidence in support of her various medical conditions, apparently to challenge the ALJ's residual functional capacity analysis by arguing that the medical evidence supports additional limitations. Further, Rouse appears to challenge the ALJ's determination that she could perform the job of phlebotomist. Finally, Rouse appears to argue that additional evidence should be included in the record.

## DISCUSSION

**A.    Medical Conditions/Limitations**

As an initial matter, to the extent that Rouse's arguments focus on the fact that she has several medical conditions, including a sleep disorder, a rapid heart rate (tachycardia), and asthma,

PJG

the mere existence or diagnosis of such impairments does not mean that the conditions were found to significantly impair her ability to engage in basic work activities. A diagnosis alone does not establish disability; rather, a plaintiff must also show a "related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Thus, functional limitations—not diagnosis—are the focus in determining disability.

In this case, the ALJ found that Rouse's asthma, allergies, and narcolepsy with cataplexy were severe impairments and that her history of palpitations and bowel problems were nonsevere impairments. The ALJ specifically considered the impairments that Rouse discusses in her brief. Upon consideration of the record and the testimony presented at the hearing, the ALJ concluded that with these impairments Rouse has the residual functional capacity ("RFC") to perform a reduced range of light work and that she must avoid hazards such as unprotected heights and dangerous machinery and be in an environment free from dust, fumes, gases, odors, and extremes of humidity and temperature.[4] (Tr. 21.)

To the extent Rouse argues that the ALJ erred because her testimony and the record demonstrate that these impairments cause additional limitations, the court concludes that Rouse has failed to demonstrate that the ALJ's RFC conclusions are unsupported by substantial evidence. Specifically, Rouse argues that her sleep disorder causes an inability to "remain awake and alert enough to perform the duties of a phlebotomist or any other profession[]." (Pl.'s Br., ECF No. 52 at 2.) However, the record repeatedly demonstrates that Rouse was "alert" and "oriented" upon examination. (See, e.g., Tr. 193, 245, 246, 261, 262, 300, 302, 305, 318, 321, 374, 380, 384, 386,

---

[4] An RFC "is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).



421, 451, 454, 457, 482, 487, 493, 495, 499, 500, 651, 672, 689.) Additionally, treatment notes from Dr. Bashir A. Chaudhary, who treated Rouse for her sleep disorder, indicate that Rouse's medications were helpful and that he encouraged her to increase exercise (Tr. 383) and "work during the day on a regular basis" (Tr. 392). See Gross, 785 F.2d at 1166 (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). While Rouse argues that she has difficulty driving due to her sleep disorder, Dr. Bashir Chaudhary's notes indicate that Rouse may drive, cautioning her to be careful and prescribing specific medication or mediation dosages when driving. (Tr. 382, 385-86.)

With regard to her alleged tachycardia, Rouse fails to point to any resulting functional limitations. In fact, as argued by the Commissioner, "although the evidence showed [Rouse] at times had a faster-than-normal heart rate, cardiac testing was otherwise normal, and no functional limitations were documented or recommended as a result of her heart rate." (Def.'s Br. at 11, ECF No. 53 at 11); see also Gross, 785 F.2d at 1166 (indicating that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss"). Similarly, although Rouse argues to the contrary, other than the functional limitations included by the ALJ, the record does not reveal any additional functional limitations from Rouse's allergies or asthma. (See Tr. 21 (finding that Rouse's RFC included restricting her to an environment free from dust, fumes, gases, odors, and extremes of humidity and temperature); Tr. 383 & 684 (treatment notes encouraging Rouse to exercise)).

Additional support for the ALJ's finding includes Rouse's testimony that she drove three hours to the hearing, albeit with stops, (Tr. 37-38, 55) and that she lived alone and "ha[d] no trouble in her daily activities" (Tr. 782; see also Tr. 36 (affirming that she lived alone); Tr. 301 (stating

Plaintiff "is active and does not have chest pain with exercise")). Also, Drs. Ellen Humphries and Robert Kukla, state agency examiners, opined that Rouse could perform a range of medium work. (Tr. 406-13, 423-30); see SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."). Contrary to Rouse's argument that Dr. Kukla's comments that Rouse's narcolepsy, asthma, and allergies are severe and that her symptoms are credible support her claim of disability, Dr. Kukla opined that Rouse could perform a range of medium work, despite her impairments.

Therefore, upon review of the record and the parties' briefs, the court finds that Rouse has failed to demonstrate that the ALJ's RFC determination was unsupported by substantial evidence. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

**B.**     **Performance of Other Work**

Rouse also argues that the ALJ erred in determining that she could perform the job of phlebotomist. After finding that Rouse was unable to perform her past relevant work as a licensed

practical nurse ("LPN") due to the exertional requirements, the ALJ proceeded to Step Five. The ALJ observed that "[t]he vocational expert testified that the claimant's past relevant work as a LPN was skilled with a specific vocational preparation (SVP) code of 6 and required the following skills: nursing skills including patient care, preparing medications, wound care, documenting medical records, and working with medicine records." (Tr. 27.) The vocational expert testified that an individual with Rouse's age, education, past relevant work experience, and RFC could performed semi-skilled light work as a phlebotomist (Dictionary of Occupational Titles ("DOT") # 079.364-022) and skilled light work as a medical records representative/administrator (DOT # 079.362-014). Rouse questioned the vocational expert as to whether a phlebotomist required special training or licensing and the vocational expert testified that it would vary from state to state. The ALJ found that the vocational expert's testimony was consistent with the information in the Dictionary of Occupational Titles. Therefore, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. 28.)

Rouse's argument appears to be that based on her conversations with individuals that work at clinics in her area, she does not possess the skills to obtain the job of phlebotomist, which she states includes finding veins, drawing blood, and computer input skills. (Pl.'s Br., ECF No. 52 at 5); see also DOT, # 079.364-022 Phlebotomist, 1991 WL 646858 (describing the work of a phlebotomist). To the extent that Rouse's argument is that she would not be hired in her area as a phlebotomist, that is not the standard in determining whether an individual is disabled. To be found disabled under the relevant framework, an individual must be unable to engage in past work or any

other work existing in the national economy, "regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 423(d)(2)(A).

Moreover, even if Rouse were unable to engage in the work as a phlebotomist, the ALJ also found Plaintiff could perform work as a medical records representative/administrator, a job which exists in significant numbers. (See Tr. 28, 68-71); Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying Step Five under the sequential evaluation analysis). Rouse has not presented any argument or challenge to the performance of that job. Therefore, Rouse cannot demonstrate that the ALJ's decision is unsupported by substantial evidence on this issue.

**C.    Additional Evidence**

The remainder of Rouse's arguments appear to focus on newly presented evidence that she contends supports her claim for disability but is not part of the administrative record. As stated above, pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits; however, the review is limited. Remand is permitted pursuant to either sentence four or sentence six of § 405(g). See Shalala v. Schaefer, 509 U.S. 292, 296 (1993) (stating sentence four and sentence six are the "exclusive" methods by which courts may remand social security appeals).

Under sentence four, review is limited to the pleadings and the administrative record. See 42 U.S.C. § 405(g); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*) (" 'Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence.' ") (quoting Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972)). Sentence six

*PJG*

provides an avenue for remand where there is new information that is not part of the administrative record. The court may remand a case under sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see also Schaefer, 509 U.S. at 297 n.2 ("Sentence-six remands may be ordered in only two situations: where the [Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency.") (citations omitted).

Therefore, the court will consider whether in light of the additional evidence presented by Rouse, remand is warranted pursuant to sentence six. In applying sentence six, the United States Court of Appeals for the Fourth Circuit has held that a court may remand the case if the following four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985); see also 42 U.S.C. § 405(g). The Commissioner argues that Rouse has failed to demonstrate that the new evidence meets this criteria.

The new evidence appears to consist of a July 2008 letter from Dr. T.K. Chaudhary, an allergist who treated Rouse's allergies; a July 2008 letter from Dr. Bashir Chaudhary, who treated Rouse's sleep disorder; various pictures, videos, and audio recordings; a December 2010 letter from Dr. Ansemo Arthur; and various blood pressure and pulse results.

The July 2008 letter from Dr. T.K. Chaudhary recommends certain precautions that Rouse should take regarding her allergy and asthma symptoms. (ECF No. 52-2 at 2.) However, as pointed out by the Commissioner, Rouse submitted a nearly identical letter from this doctor to the Appeals Council, which is included in the record. (See Tr. 789.) Accordingly, the court finds that this evidence is cumulative to evidence in the record. See Borders, 777 F.2d at 955 (stating that to warrant a remand under sentence six evidence must not be simply cumulative); Riffle v. Shalala, No. 93-2168, 1995 WL 79999, at *4 (4th Cir. 1995) (finding new report was merely cumulative of his earlier clinical findings and of findings already contained in the record). Further, the evidence is not material because the ALJ already limited Rouse's RFC based on similar evidence by restricting Rouse to "an environment free from dust, fumes, gases, odors, and extremes of humidity and temperature." (Tr. 21; see also Tr. 23 (discussing records from Dr. T.K. Chaudhary suggesting environmental control for allergens) (citing Tr. 238)); Borders, 777 F.2d at 955 (requiring that the new evidence be material).

The July 2008 letter from Dr. Bashir Chaudhary is not material, as the Commissioner's decision might not reasonably have been different if she had this evidence, and even if it were, Rouse has failed to demonstrate good cause for failing to submit the evidence while her claim was before the Commissioner. This letter states, in pertinent part, that

> [Rouse] has a sleep disorder, which she is being treated with medication and regular sleep hours that she attempts to maintain but insomnia still sometimes causes difficulty. At the beginning of treatment, it was suggested that she could attempt to return to work on day shift only. Due to the patient's report of continued symptoms, returning to work was not attempted. Her symptoms include, sleepiness during driving, reduced alertness, confusion, dropping of things, falling over and ringing in the ears. Her medication has been increased to the maximum dosage, which has helped but not to routine functional status. I have suggested that she look into disability and legal assistance.

(ECF No. 52-2 at 1.) The ALJ specifically considered similar evidence about Rouse's sleep disorder, including Rouse's subjective reports in the hearing and the medical records. (See Tr. 21, 22, 26.) The ALJ observed that Rouse was able to drive and in fact drove to the hearing; that she did not have any difficulty understanding or participating in the hearing process without a representative; and that she was able to read and complete a waiver of right to counsel form. (Tr. 23.) The ALJ also indicated that in May 2008, Dr. Bashir Chaudhary stated that Rouse "has a sleep disorder and has been advised to minimize sleep disruption by having regular sleep hours at night. Dr. Chaudhary opined that she should work during the day on a regular basis." (Tr. 26) (citing Tr. 392). Additionally, as pointed out by the Commissioner, Rouse's examinations repeatedly showed that she was "alert" and "oriented," despite her acknowledged sleep disorder. (See Def.'s Br. at 11, ECF No. 53 at 11) (citing Tr. 193, 245, 246, 261, 262, 300, 302, 305, 318, 321, 374, 380, 384, 386, 421, 451, 454, 458, 482, 487, 493, 495, 499, 500, 651, 672, 689). Finally, Dr. Chaudhary's suggestion that she seek disability appears to be based on Rouse's indication that she did not attempt to return to work based on her report of continued symptoms. This suggestion from the July 2008 letter was issued approximately two months after the suggestion that she work during the day on a regular basis and, other than Rouse's subjective reports, there do not appear to be any medical reports or documentation to support a worsening of her functional limitations. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (upholding the ALJ's decision to accord little weight to an opinion in part because it was based largely on plaintiff's subjective complaints); Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) ("[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof") (citation omitted).

Moreover, even if the evidence is material, Rouse has failed to provide any reason, much less good cause, for not submitting this evidence while her claim was pending before the Commissioner. Rouse simply states that this letter is not included in the record. See Borders, 777 F.2d at 955 (requiring "good cause for the claimant's failure to submit the evidence when the claim was before the [Commissioner]."). Further, the court observes that the ALJ provided Rouse additional time after the hearing to submit any additional evidence (Tr. 47-49) and Rouse had an opportunity to submit additional documentation on appeal to the Appeals Council. (See Tr. 10, Order of Appeals Council listing the additional evidence submitted and considered by the Appeals Council).

Rouse argues that she was "not allowed to present evidence that I had available for review at the hearing" and she would like that evidence to be considered. (Pl.'s Br., ECF No. 52 at 1.) Rouse describes that evidence as "pictures, audio, and video" from her cellular phone and an "audio recording of [her] heart." (Id.) Rouse appears to allege that her financial status prevented her from obtaining the equipment she needed to get the data off of her cellular phone, and that she "should have been allowed to present [her] evidence at the time of the hearing without being required to modify the presentation of the evidence." (Id. at 2.) However, upon review of the transcript, the court concludes that the ALJ did not preclude Rouse from presenting her evidence; rather, he required her to submit the evidence into the file for review. (See, e.g., Tr. 59.) Additionally, when Rouse expressed her concerns about this evidence, the ALJ noted that Rouse had many months since the Notice of Hearing to compile any evidence she wished to present, and provided her with additional time to submit any further evidence. (Tr. 47-49.) Nevertheless, it appears that Rouse did not submit the specific evidence attached to her brief to either the ALJ or the Appeals Council.

Page 14 of 18

PJG

Moreover, upon review of this evidence, the court finds that the evidence is not material and some of it is cumulative. Rouse has failed to demonstrate how the photographs support her claim for disability; rather, she states that they document her "signs and symptoms." (Pl.'s Br., ECF No. 52 at 1.) Many of the photographs appear to be similar to photographs that were were submitted to the ALJ after the hearing and contained in the record.[5] (Tr. 165-70.) The record also reflects that when Rouse presented to Dr. Vishal Arora with the Vascular Medicine Clinic of MCG, Inc. for an evaluation for vascular etiology of lower extremity symptoms, Rouse showed Dr. Arora some photographs from her cellular phone. Dr. Arora described these photographs as showing mild edema of Rouse's feet. (Tr. 737.) Additionally, Rouse's arguments to the ALJ that accompanied the photographs (Tr. 165) and her letter to the Appeals Council (Tr. 171-72) referred to this type of evidence and argued that it supported her claim of disability. The ALJ rejected this contention. Based on the foregoing the court finds that the photographs are not material and/or are cumulative.

To the extent that Rouse argues that she has an audio recording of her heart that should be considered, Rouse has failed to demonstrate that this evidence is material. As argued by the Commissioner, "the record before the ALJ already contained numerous cardiac test results interpreted by qualified physicians as being unremarkable except for a fast heart rate (sinus tachycardia), and apparently demonstrating no need for any functional restrictions, much less restrictions beyond those the ALJ imposed in the RFC assessment." (Def.'s Br. at 18-19, ECF No. 53 at 18-19) (citing Tr. 289, 306, 421, 449, 500, 572, 594, 670-72, 723-25, 737-39, 782). By contrast, as conceded by the Commissioner, the ALJ is not a medical professional qualified to

---

[5] The record also appears to contain photographs that Rouse submitted to the Appeals Council; however, they are indiscernible. (See Tr. 818-23.)



interpret such a recording, which further supports the court's conclusion that this evidence is not material.

With regard to the remaining evidence, the court similarly finds that it is not material, as Rouse has failed to demonstrate that the Commissioner's decision might have been different. For example, Rouse presents images that Rouse alleges demonstrate her blood pressure and pulse results. (ECF No. 52-3 at 3-29.) She also presents a December 2010 letter from Dr. Arthur that opines that "the function of [Rouse's] heart is entirely normal." (ECF No. 52-2 at 3.) The letter notes that Rouse has some leaky valves that they "can follow." (Id.) However, the court observes that the record already contains documents concerning her heart rate and blood pressure. (See, e.g., Tr. 450, 465, 480, 492, 515-18, 595, 689, 724, 730, 731, 739, 743, 782.) Moreover, Rouse has failed to demonstrate how any of the other evidence would result in any additional functional limitations. See Miller v. Barnhart, 64 F. App'x 858, 860 (4th Cir. 2003) ("The findings contained in the additional records appear to reflect rather mild impairments and are not accompanied by any restrictions on [the claimant's] activities."); Fagg v. Chater, No. 95-2097, 1997 WL 39146, at *2 (4th Cir. 1997) (unpublished) (finding additional evidence not material where it suggested that the claimant had depression, but failed to "assert . . . that [the claimant] was disabled or limited in any way because of her depression").

Therefore, the court finds that Rouse has not met the prerequisites for a sentence six remand for any of the new evidence. See Borders, 777 F.2d at 955; see also 42 U.S.C. § 405(g).

PJG

**RECOMMENDATION**

For the foregoing reasons, the court finds that Rouse has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 16, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).